1  Edwin Aiwazian (SBN 232943)
   Arby Aiwazian (SBN 269827)
2  Joanna Ghosh (SBN 272479)
   Brian J. St. John (SBN 304112)
3  **LAWYERS *for* JUSTICE, PC**
   410 West Arden Avenue, Suite 203
4  Glendale, California 91203
   Tel: (818) 265-1020 / Fax: (818) 265-1021
5
   *Attorneys for* Plaintiff Edgar Mariscal and the Class
6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| EDGAR MARISCAL, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act, | Case No.: 8:20-CV-02071-JLS-KES |
| | Honorable Josephine L. Staton |
| | Courtroom 8A |
| Plaintiff, | **CLASS ACTION** |
| vs. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| ARIZONA TILE, LLC, an unknown business entity; and DOES 1 through 100, inclusive, | |
| Defendant. | [Notice of Motion and Motion for Attorneys' Fees, Costs, and Class Representative Service Award; Declaration of Class Counsel (Edwin Aiwazian); Declaration of Class Representative (Edgar Mariscal); Declaration of Settlement Administrator (Jarrod Salinas); [Proposed] Order Awarding Attorneys' Fees, Costs, and Class Representative Service Award; and [Proposed] Order Granting Final Approval of Class Action and PAGA Settlement and Judgment filed concurrently herewith] |
| | Date:        September 8, 2023 |
| | Time:        10:30 a.m. |
| | Courtroom:   8A |
| | Complaint Filed:   September 15, 2020 |
| | FAC Filed:   May 28, 2021 |
| | SAC Filed   February 1, 2022 |
| | Trial Date:   None Set |

(Left margin, vertical) **LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**PLEASE TAKE NOTICE** that on September 8, 2023, at 10:30 a.m., or as soon thereafter as this matter may be heard before the Honorable Josephine L. Staton, in Courtroom 8A of the United States District Court for the Central District of California, located at First Street Courthouse, 350 West First Street, Los Angeles, California 90012, Plaintiff Edgar Mariscal ("Plaintiff" or "Class Representative") will and hereby does move for an order granting final approval of:

1.      The proposed class action settlement described herein and as set forth in the parties' Amended Joint Stipulation of Class Action and PAGA Settlement and Release of Claims ("Settlement," "Agreement," or "Settlement Agreement") on the grounds that the Settlement is fair, adequate, and reasonable because:

- A Net Settlement Amount of approximately **$1,486,227.33** will be fully distributed to the Class Members who did not submit a timely and valid Request for Exclusion ("Participating Class Member");

- **No Objections** were submitted to the settlement administrator, Phoenix Class Action Administration Solutions ("Settlement Administrator" or "Phoenix");

- Only **Two (2) Requests for Exclusion** were submitted to the Settlement Administrator;

2.      Payment in the amount of **$8,000.00** to the Settlement Administrator, Phoenix Class Action Administration Solutions ("Phoenix"), for Settlement Administrator Costs;

3.      Allocation for the penalties under the California Labor Code Private Attorneys General Act of 2004, Labor Code section 2698, et seq. ("PAGA"), in the amount of $150,000.00, of which seventy-five percent (75%) or $112,500.00 will be paid to the California Labor and Workforce Development Agency ("LWDA Payment"), and twenty-five percent (25%) or $37,500.00 will be part of the Net Settlement Amount for distribution to the Participating Class Members.

This motion is based upon the following Memorandum of Points and Authorities and the Declaration of Settlement Administrator (Jarrod Salinas of Phoenix Class Action Administration Solutions) in support thereof; as well as the concurrently-filed Notice of Motion and Motion for Attorneys' Fees, Costs, and Class Representative Service Award, and the Declarations of Class

Counsel (Edwin Aiwazian) and Class Representative (Edgar Mariscal) in support thereof; the pleadings and other records on file with the Court in this matter; and such evidence and oral argument as may be presented at the hearing on this Motion.

Dated: August 4, 2023                              **LAWYERS *for* JUSTICE, PC**

By:    _____/s/_ Brian J. St. John_____

Brian J. St. John
*Attorneys for* Plaintiff and the Class

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

# TABLE OF CONTENTS

I.    SUMMARY OF MOTION .................................................................................1

II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND ....................2

III.  SUMMARY OF THE SETTLEMENT TERMS AND PLAN OF DISTRIBUTION..5

IV.   THE SETTLEMENT ADMINISTRATION PROCESS ................................7

V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT.................................................................................8

    A.    The Settlement Resulted from Arm's-Length Negotiations Based Upon Extensive Investigation and Discovery. ................................................9

    B.    The Risks Inherent in Continued Litigation Favor Final Approval of the Settlement. ...............................................................................11

    C.    The Settlement Is Fair, Reasonable, and Adequate.........................13

    D.    The Class Was Represented by Competent Counsel.......................14

    E.    There Are No Objections to the Settlement. ...................................14

VI.   THE SETTLEMENT ADMINISTRATOR COSTS ARE FAIR AND REASONABLE AND SHOULD BE APPROVED........................................15

VII.  CONCLUSION .........................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

4

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135 ........ 9, 15

*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43 .................................................... 8, 9

*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794 ......................................... 8, 9, 15

*In re American Bank Note Holographics, Inc., Securities Litigation* (S.D.N.Y. 2001) 127
 F.Supp.2d 418 .................................................................................................. 14

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 .................................. 9, 14

 **Other Authorities**

Conte & Newberg, *Newberg on Class Actions* (4th Ed., 2002) § 11.47 ........................ 14

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF MOTION

Plaintiff Edgar Mariscal ("Plaintiff") seeks final approval of the Amended Joint Stipulation of Class Action and PAGA Settlement and Release of Claims  ("Settlement," "Agreement," or "Settlement Agreement"), entered into by and between Plaintiff and Defendant Arizona Tile, LLC  ("Defendant") (collectively with Plaintiff, the "Parties").[1]

The Settlement provides for a Gross Settlement Amount of $2,500,000.00 and seeks relief on behalf of the following Class:

> All persons who are employed or have been employed by Arizona Tile, LLC as non-exempt, hourly employee in the State of California during the Class Period ("Class" or "Class Members"). Settlement Agreement, ¶¶ I. 5-6.

Plaintiff moves for final approval of all payments allocated and provided for by the Settlement, to be paid from the Gross Settlement Amount, including and not limited to, Class Representative Service Award in the amount of $7,500.00 to Plaintiff, attorneys' fees in the amount of $875,000.00, which is thirty-five percent (35%) of the Gross Settlement Amount, and reimbursement of litigation costs and expenses in the amount of $10,772.67 (together "Attorneys' Fees and Costs")[2] to Lawyers *for* Justice, PC, Settlement Administrator Costs in the amount of $8,000.00 to Phoenix Class Action Administration Solutions ("Phoenix" or "Settlement Administrator"), and $150,000.00 allocated to penalties under the Private Attorneys General Act  ("PAGA Allocation"), of which $112,500.00 will be paid to the California Labor and Workforce Development Agency ("LWDA") for its portion of the PAGA Allocation ("LWDA Payment"), and $37,500.00 will be part of the Net Settlement Amount for distribution to the Participating Class Members. Settlement Agreement, ¶¶ II.18 & III.15. The Net Settlement Amount is the amount that will be available for distribution to Class Members who do not submit a timely and valid Request for Exclusion ("Participating Class Members"). Settlement Agreement, ¶ I.25.

---

[1] A copy of the fully-executed Settlement Agreement is attached as "EXHIBIT 1" to the Declaration of Ovsanna Takvoryan in Support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action and PAGA Settlement ("Takvoryan Decl.") (Docket No. 53-1).

[2] In the interest of judicial efficiency, and in support of the allocations and requests for the Attorneys' Fees, Costs, and Class Representative Service Award, Plaintiff respectfully refers the Court to Plaintiff's Motion for Attorneys' Fees, Costs, and Class Representative Service Award, and papers in support thereof, filed concurrently herewith, on August 4, 2023.

1

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

The Settlement is fair, adequate, and reasonable, and is the product of arm's-length, good-faith negotiations by experienced counsel, presided over by a highly-regarded mediator who is experienced in mediating wage-and-hour class action lawsuits. Most importantly, as of the date of this Motion, *not a single Class Member has requested exclusion from or objected to any aspect of the Settlement, including the requested Attorneys' Fees and Costs, Class Representative Service Award, Settlement Administrator Costs, or allocation for PAGA Allocation.*

Accordingly, the Court should grant final approval of the Settlement, and all payments allocated and provided for by the Settlement Agreement, including and not limited to the Settlement Administrator Costs and the PAGA Allocation.

## II.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Defendant is a wholesaler of stone, granite and tile pieces for residential and commercial spaces with over one dozen locations throughout the State of California. Plaintiff Edgar Mariscal was employed by Defendant as an hourly-paid, non-exempt employee from approximately February 2013 to July 2018.

On September 15, 2020, Plaintiff filed a putative class action complaint in the Orange County Superior Court, in the case entitled *Mariscal v. Arizona Tile, LLC*, case no. 30-2020-01160477-CU-OE-CXC ("Action"), against Defendant for violations of the California Labor Code and the California Business and Professions Code.

On October 26, 2020, Defendant filed its Notice of Removal removing the Action to the United States District Court, Central District of California (Doc. No. 1).

On April 14, 2021, the U.S. District Court denied Plaintiff's Motion to Remand (Doc. No. 27).

On May 28, 2021, Plaintiff filed a First Amended Class Action Complaint for Damages ("FAC" or "First Amended Complaint") (Doc. No. 30). The First Amended Complaint alleged claims for: failure to properly pay overtime wages, failure to pay meal period premiums, failure to pay rest period premiums, failure to pay minimum wages, failure to timely pay wages upon termination of employment, failure to timely pay wages during employment, non-compliant wage

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1    statements, failure to keep requisite payroll records, failure to reimburse business expenses, and

2    violation of California Business and Professions Code § 17200, *et seq.*

3        On June 11, 2021, Defendant filed an Answer to Plaintiff's First Amended Complaint (Doc.

4    No. 31).

5        On September 8, 2021, Plaintiff served a letter on the LWDA and the Defendant, that

6    provided notice of his intent to seek civil penalties for alleged violations of the California Labor

7    Code, under PAGA (the "PAGA Letter").

8        On February 2, 2022, Plaintiff filed a Second Amended Class Action Complaint for

9    Damages ("SAC" or "Second Amended Complaint") (Doc. No. 41). The Second Amended

10   Complaint alleged claims for: failure to properly pay overtime wages, failure to pay meal period

11   premiums, failure to pay rest period premiums, failure to pay minimum wages, failure to timely

12   pay wages upon termination of employment, failure to timely pay wages during employment, non-

13   compliant wage statements, failure to keep requisite payroll records, failure to reimburse business

14   expenses, violation of California Business and Professions Code § 17200, *et seq.*, and violations

15   of the California Labor Code § 2698, *et. seq.*

16       Plaintiff's core allegations are that Defendant has violated the California Labor Code by,

17   inter alia, failing to properly pay minimum and overtime wages, failing to provide compliant meal

18   and rest periods or pay associated premium payments, failing to timely pay wages upon

19   termination, failing to provide compliant wage statements, and failing to reimburse necessary

20   business-related expenses, and thereby engaged in unfair business practices under the California

21   Business and Professions Code sections 17200, et seq. As a result, Plaintiff contends that he and

22   the Class Members are entitled to, *inter alia,* unpaid wages, penalties, and attorneys' fees.

23       Defendant denies any liability or wrongdoing of any kind associated with the claims

24   asserted in Plaintiff's FAC, disputes the damages and penalties claimed by Plaintiff, and further

25   contends that, for any purpose other than settlement, Plaintiff's claims are not appropriate for class

26   or representative action treatment.

27       The Parties began to engage in informal and formal discovery to understand the nature of

28   the allegations and the scope of potential liability. On March 18, 2021, Plaintiff served on

Defendant requests for production, two sets of special interrogatories, and a notice of rule 30(b)(6) deposition of Defendant's person most knowledgeable. On April 6, 2021, Defendant served a notice of deposition of Plaintiff and requests for production. On April 18, 2021, Defendant responded to Plaintiff's discovery requests.

The Parties began to discuss the possibility of mediation and Defendant provided Plaintiff's counsel with pertinent data for the Class Members so that the Parties could fully-investigate the claims at issue and understand their strengths and weaknesses.

On July 23, 2021, the Parties attended a mediation with experienced mediator Jeffrey Krivis ("Mediator"). After the mediation, the Parties reached a settlement, as provided in the Settlement Agreement and herein, to settle Plaintiff's claims on a class-wide and representative basis.

On January 21, 2022, Plaintiff filed his initial Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement ("Motion for Preliminary Approval") (Doc. No. 37). The Motion for Preliminary Approval was unopposed.

Following a hearing on the Motion for Preliminary Approval and the submission of a supplemental brief and declarations in connection therewith at the request of the Court (Doc. No. 48), the Court entered an Order Denying Plaintiff's Motion for Preliminary Approval on August 4, 2022 ("Order Denying Preliminary Approval") (Doc. No. 49).

On January 17, 2023, Plaintiff filed his Renewed Motion for Preliminary Approval of Class Action Settlement ("Renewed Motion for Preliminary Approval") and supporting documents. (Doc. No. 53). On March 28, 2023, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), thereby preliminarily approving the terms of the Settlement, the Notice of Pendency of Class Action Settlement and Hearing Date ("Class Notice"), and the proposed administration procedures and associated deadlines. (Doc. No. 57).

Plaintiff now moves for final approval of the Settlement, Settlement Administrator Costs, and the amount for the PAGA Allocation, and for approval of the requested Attorneys' Fees and Costs and Class Representative Service Award, as set forth in the concurrently filed Motion for Attorneys' Fees, Costs, and Class Representative Service Award.

4

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

### III.   SUMMARY OF THE SETTLEMENT TERMS AND PLAN OF DISTRIBUTION

Under the terms of the Settlement Agreement, Defendant has agreed to pay a Gross Settlement Amount of $2,500,000.00. Settlement Agreement, ¶ I.18.  Subject to approval by the Court, the Net Settlement Amount will be calculated by deducting the following amounts from the Gross Settlement Amount: (1) Attorneys' Fees and Costs, consisting of attorneys' fees in the amount of 35% of the Gross Settlement Amount (equal to $875,000.00) and reimbursement of litigation costs and expenses in the amount of $10,772.67, to Class Counsel; (2) Class Representative Service Award in the amount of $7,500.00 to Plaintiff Edgar Mariscal; (3) Settlement Administrator Costs in the amount of $8,000.00 to Phoenix; and (4) LWDA Payment in the amount of $112,500.00. *Id.*, ¶ III.15. The Net Settlement Amount, which is estimated to be $1,486,227.33, will be distributed in accordance with the Settlement Agreement, and there is no reversion to Defendant.[3]

Participating Class Members will be paid from the Net Settlement Amount on, a *pro-rata* basis, based upon the number of weeks in which Class Member(s) performed work for Defendant in the State of California during the Class Period based on Defendant's records ("Compensable Workweeks"). Settlement Agreement, ¶¶ I. 9 & I.19. The Individual Settlement Payment of a Participating Class Member that performed work for Defendant on a full-time basis will be based on the number of Compensable Workweeks she or he worked in proportion to the aggregate number of Compensable Workweeks worked by all Participating Class Members. The Individual Settlement Payment of a Participating Class Member that performed work for Defendant on a part-time basis will be based on the number of Compensable Workweeks she or he worked, pro-rated by the percentage of hours out of 40 hours she or he averaged per week, in proportion to the aggregate number of Compensable Workweeks worked by all Participating Class Members. For example, if the average number of hours a Participating Class Member performed work for Defendant per week totals 25 hours, his/her Compensable Workweeks would be pro-rated by 70%

---

[3] This amount is higher than the amount stated in Paragraph 15 of the accompanying Declaration of Jarrod Salinas Regarding Notice and Settlement Administration ("Phoenix Declaration" or "Phoenix Decl.") because the Settlement Administrator's calculation assumes that Class Counsel will obtain litigation costs and expenses in the maximum amount of $25,000.00, which is allocated under the Settlement. However, Class Counsel seeks the amount of only $10,772.67 for reimbursement of litigation costs and expenses, and the difference of $14,227.33 will remain part of the Net Settlement Amount.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

(25 hours/40 hours = 70%). Thus, the Participating Class Member that performed work for Defendant on a part-time basis averaging 25 hours per week, s/he will be credited with 70% of their Compensable Workweeks for purposes of calculating their Individual Settlement Payment. *Id*., ¶ III. 17.

Participating Class Members will be paid on a *pro-rata* basis. The Individual Settlement Payment of a Participating Class Member that performed work for Defendant on a full-time basis will be based on the number of Compensable Workweeks during which he or she performed work for Defendant during the Class Period in proportion to the aggregate number of Compensable Workweeks worked by all Participating Class Members during the Class Period. The Individual Settlement Payment of a Participating Class Member that performed work for Defendant on a part-time basis will be based on his or her number of Compensable Workweeks, pro-rated by the percentage of hours out of 40 hours he or she averaged per week, in proportion to the aggregate number of Compensable Workweeks worked by all Participating Class Members during the Class Period. *Id*., ¶ III. 17.

Class Members had forty-five (45) calendar days after the initial mailing of the Class Notice to submit a Request for Exclusion, written Notice of Objection, and/or dispute of the Compensable Workweeks credited to them, or in the case of a re-mailed Notice, an additional twenty (20) calendar days ("Response Deadline"). Settlement Agreement, ¶¶ I.32, III.9, III.11, & III.10. The Response Deadline was June 12, 2023. Phoenix Decl., ¶¶ 8-10. As of the date of this motion, the Settlement Administrator has received only two (2) Requests for Exclusion or no written Notices of Objection from Class Members. *Id*., ¶¶ 8-9.

Individual Settlement Payments will be allocated as twenty percent (20%) wages to be reported on IRS Form W-2, and eighty percent (80%) as interest, penalties, and non-wage damages to be reported on IRS Form 1099. *Id*., ¶ III. 16. The Individual Settlement Payment will be reduced for the employee's share of tax withholdings and payroll deductions on the wages portion. Id. Defendant agrees to pay the employer's share of payroll taxes on the Individual Settlement Payments separately and in addition to the Gross Settlement Amount. *Id*., ¶ III. 15.

///

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

All Individual Settlement Payment checks will remain valid and negotiable for 160 days from the date of the mailing. After one hundred and sixty (160) days of the mailing of the Individual Settlement Payment checks, funds attributable to unclaimed, undeliverable, or expired Individual Settlement Payment checks will be transmitted to the State of California Office of the Controller Unclaimed Property Fund in the name of the Participating Class Members who did not cash his/her Settlement check. If the Court does not approve the escheatment of uncashed funds, the Parties have agreed to proceed pursuant to California Code of Civil Procedure section 384, to distribute uncashed funds as described therein, and have agreed upon the non-profit Bet Tzedek Legal Services as the *cy pres* designee pursuant to Code of Civil Procedure section 384(b)(3)(C). Id., ¶ III. 20.

## IV.  THE SETTLEMENT ADMINISTRATION PROCESS

The Court-appointed Settlement Administrator, Phoenix, has taken all necessary steps to effectuate the notice and settlement administration process, as set forth in the Court's March 28, 2023 Preliminary Approval Order.

On March 29, 2023, Phoenix received a copy of the Court Approved Class Notice.

On April 11, 2023, Phoenix received a data file from Defendant's counsel that contained each Class Member's full name, last known address, last known home telephone number, social security number, Compensable Workweeks and the total weekly average hours worked by each Class Member that performed work for Defendant on a part-time basis during the Class Period (collectively, "Class Data"). Phoenix Decl., ¶ 3. The Class Data contained information for 425 individuals identified as Class Members. Ibid.  Phoenix processed the names and addresses through the National Change of Address Database ("NCOA") and updated the Class Data with any updated addresses located. *Id*., ¶ 4.

On April 28, 2023, Phoenix mailed the Class Notice via first class mail to 425 individuals identified as Class Members in the Class Data. Phoenix Decl., ¶ 5.

As of the date of this Motion, sixteen (16) Class Notices were returned as undeliverable. Phoenix Decl., ¶ 6. Of the sixteen (16) returned Class Notices, none were returned with a forwarding address. Ibid.  Phoenix performed a skip-trace search on those that were returned to

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Phoenix without forwarding addresses, located an updated address for fifteen (15) Class Members, and promptly re-mailed the Class Notice to the updated addresses. Ibid.  Ultimately, one (1) Class Notice remains undeliverable because an updated address was not located through skip-tracing. *Id.*, ¶ 7.

The Response Deadline was June 12, 2023. Phoenix Decl., ¶¶ 8-10. As of the date of this Motion, the Settlement Administrator has not received only two (2)  Requests for Exclusion, and no Notices of Objection or disputes regarding Compensable Workweeks from Class Members. Ibid.

To date, there are four hundred and twenty-three (423) Class Members who did not submit a timely and valid Request for Exclusion, and are therefore, deemed to be Participating Class Members. Phoenix Decl., ¶ 11.  Pursuant to the terms of the Settlement, the Net Settlement Amount of approximately $1,486,227.33 will be distributed to Participating Class Members in accordance with the terms of the Settlement. Phoenix Decl., ¶ 12.[4]  The *highest* Individual Settlement Payment is currently estimated to be at least $7,222.09 and the *average* Individual Settlement Payment is currently estimated to be at least $3,479.91. Ibid.[5]

## V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT.

The trial court has broad discretion to determine whether a class action settlement is fair and reasonable.  *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 52.  To determine whether the settlement is fair and reasonable, courts consider relevant factors such as "the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801.  "The list of factors is not exclusive and the

---

[4] See n.3, *supra*.

[5] The actual average and highest Individual Settlement Payment will be larger than the amounts stated in the Phoenix Declaration because the Net Settlement Amount is larger due to Class Counsel's request for reimbursement of litigation costs and expenses in an amount that is less than $25,000.00 (the difference between the amount sought and the amount authorized under the Settlement, i.e., $14,227.33, will be part of the Net Settlement Amount).  See n.3, *supra*.

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1    court is free to engage in a balancing and weighing of the factors depending on the circumstances

2    of each case." *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 245.  "Due regard

3    should be given to what is otherwise a private consensual agreement between the parties." *Dunk*,

4    *supra*, 48 Cal.App.4th at 1801.

5        The proponent of the settlement has the burden to show that it is fair and reasonable.

6    *Wershba*, *supra*, 91 Cal.App.4th at 245. At the final approval stage, a presumption of fairness exists

7    where, as here: "(1) the settlement is reached through arm's-length bargaining; (2) investigation

8    and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is

9    experienced in similar litigation; and (4) the percentage of objectors is small." *Dunk*, *supra*, 48

10   Cal.App.4th at 1802. In reviewing a class settlement, the court need not reach any ultimate

11   conclusions on the issues of fact and law that underlie the merits of the dispute.

12   *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1146.  The

13   inquiry is not whether the settlement agreement is the best one that class members could have

14   possibly obtained, but whether the settlement, taken as a whole, is "fair, adequate, and reasonable."

15   *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 55. A settlement need not obtain 100 percent of

16   the damages sought in order to be fair, reasonable, and ultimately, meaningful. *Wershba*, *supra*,

17   91 Cal.App.4th at 251. Even if the proposed settlement affords relief that is substantially narrower

18   than it would be if the case were to be successfully litigated, that is no bar to a class settlement

19   because the public interest may indeed be served by a voluntary settlement in which each side

20   gives ground in the interest of avoiding prolonged litigation.

21       A.    <u>**The Settlement Resulted from Arm's-Length Negotiations Based Upon**</u>

22            <u>**Extensive Investigation and Discovery.**</u>

23       The Parties actively litigated the case since it commenced on September 15, 2020. Both

24   sides investigated the veracity, strength, and scope of the claims, and Class Counsel was actively

25   preparing the case for class certification, representative adjudication, and trial, prior to reaching

26   the Settlement. Declaration of Edwin Aiwazian in Support of Plaintiff's Motion for Final Approval

27   of Class Action and PAGA Settlement and Motion for Attorney's Fees, Costs, and Class

28   Representative Service Award ("Aiwazian Decl."), ¶ 6. The Parties conducted significant formal

and informal discovery and investigation into the facts of the case, and also informally exchanged a large volume of information, documents and data throughout the course of litigation and in connection with mediation and settlement negotiations. Ibid. Class Counsel also had the opportunity to interview and obtain information from Plaintiff and other Class Members, and reviewed and analyzed a large volume of information, documents and data obtained from Plaintiff, Defendant, and other sources. Ibid. The documents and data reviewed and analyzed by Class Counsel included, and were not limited to, Plaintiff's employment records; class time and pay records; redacted class list (containing, *inter alia*, employee ID numbers, work location, job position, employment status, employment dates, compensation type, and rate of pay information for the class); multiple iterations of Defendant's Employee Handbook ; job descriptions; various agreements and acknowledgements; and numerous other documents regarding Defendant's employment and operations policies, practices, and procedures, among other information, documents, and data. Ibid. Class Counsel researched applicable law, developed liability, damages, and penalties valuation models in connection with mediation and settlement negotiations, and met and conferred with Defendant's counsel on numerous occasions, e.g., to discuss issues relating to the pleadings, case management, motion practice, and production of information, documents, and data in the course of litigation and mediation and settlement negotiations.  Other work performed by Class Counsel included, and was not limited to, case strategy and analysis; drafting, reviewing, and revising pleadings, motion-related papers, and the mediation brief; preparing for and attending court proceedings; and preparing for and attending mediation and settlement negotiations. Ibid.

After conducting significant formal and informal discovery and investigation into the facts of the case, the Parties attended a formal mediation conducted by Jeffrey Krivis, Esq., a well-regarded mediator experienced in mediating complex labor and employment matters. Aiwazian Decl., ¶ 8. In the course of mediation and settlement discussions, the Parties exchanged a thousands of pages of information, documents, and data, and discussed various aspects of the case, including and not limited to, the risks and delays of further litigation, the risks and expenses to the Parties of proceeding with class certification and/or representative adjudication, the law relating to off-the-clock theory, meal and rest periods, Plaintiff's claims and allegations, and wage-and-hour law and

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

enforcement, the evidence produced and analyzed, and the possibility of appeals, among other things. Ibid. During all settlement discussions, the Parties conducted their negotiations at arm's length in an adversarial position. Ibid. Arriving at a settlement that was acceptable to the Parties was not easy. Ibid. Defendant and its counsel felt very strongly about Defendant's ability to prevail on the merits and to avoid class certification and representative adjudication. Plaintiff and Class Counsel believed that they would be able to obtain class certification and prevail at trial. Ibid. After conducting significant formal and informal discovery and investigation, extensive settlement negotiations, and with the aid of the mediator's evaluation, the Parties ultimately agreed that the case was well-suited for settlement given the legal issues relating to Plaintiff's principal claims and the factual circumstances, as well as the costs and risks to the Parties that would attend further litigation. Ibid.

The Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at certification, trial, and/or appeals. Class Counsel had the opportunity to interview, and obtain information from Plaintiff and other Class Members. Aiwazian Decl., ¶ 6. Class Counsel also reviewed and analyzed a large volume of information, documents, and data obtained from Defendant, Plaintiff, and other sources, and performed significant research into the applicable law, which is constantly evolving as it relates to certification, off-the-clock theory, meal and rest periods, PAGA representative claims, wage-and-hour law and enforcement, Plaintiff's claims and damages, and Defendant's defenses, as well as facts discovered. Ibid. The Settlement was based on this large volume of facts, evidence, and investigation. *Id.*, ¶¶ 6 & 8. Additionally, Class Counsel has extensive experience in handling complex wage-and-hour matters, including significant experience in employment class action litigation. *Id.*, ¶¶ 15-18.

**B.     The Risks Inherent in Continued Litigation Favor Final Approval of the Settlement.**

The Settlement, which provides for a Gross Settlement Amount of $2,500,000.00, represents a fair, adequate, and reasonable resolution of the case, given the risks inherent in litigating class and representative claims through certification proceedings, trial, and/or appeals. Aiwazian Decl.,

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

¶¶ 8 & 21. The Settlement was calculated using information and data uncovered through extensive case investigation, formal and informal discovery, and the exchange of information in the context of preparing for mediation and ongoing settlement negotiations. *Id*., ¶¶ 5-8. Had the action not settled, Defendant would have vigorously challenged class certification, manageability of representative adjudication, and liability. Defendant contended that individualized questions of fact predominated over any common issues, and these issues would pose challenges to certification and representative adjudication. Defendant would have likely argued again at trial, if any, that Plaintiff's claims were not appropriate for class-wide and/or representative adjudication. On the other hand, Defendant also faced the risk of the Court certifying a class and allowing a jury to decide Plaintiff's claims on a class-wide or representative basis. Additionally, preparation for trial would have been expensive for all parties.

It is preferable to reach an early resolution of a dispute because such resolutions save time and money that would otherwise go to litigation. If this matter had settled after further litigation, the settlement amount would have taken into account the additional costs incurred, and there might have been less money available for Class Members after all was said and done. This is not just an abstract contention. The risks and expenses of further litigation outweighed any benefit that might have been gained otherwise. These risks of further litigation include a determination that the claims were unsuitable for class treatment and/or representative adjudication, class de-certification after certification of a class, allowing a jury to decide the claims asserted in the case, and the real possibility of no recovery after years of litigation. Additionally, the Parties were moving into the phase of the litigation where they would have to conduct a significant amount of additional discovery, including and not limited to, depositions of Defendant's Person Most Knowledgeable designees, expert witnesses, and percipient witnesses, such as managers, supervisors, and other current and former employees throughout the State of California. Discovery disputes would have certainly arisen, which would have cost the parties additional time and money. In contrast, the Settlement provides real and significant benefits for the Class here and now, while avoiding the further expenses, risks, and delay of prolonged litigation with only the possibility of recovery.

///

It would be grossly inefficient for such a large class of current and former employees to bring individual actions to recover from Defendant for the alleged violations of wage-and-hour laws. Moreover, the potential individual recovery that could be obtained by a Class Member would not be significant enough to provide him or her with the incentive to sue. By granting final approval of the Settlement, the Court can approve a resolution that provides a certain and substantial recovery for Class Members and the State of California.

**C.** **The Settlement Is Fair, Reasonable, and Adequate.**

The Settlement, which provides for a Gross Settlement Amount of $2,500,000.00, represents a fair, reasonable, and adequate resolution of the case. The Settlement was calculated using information and data uncovered through extensive case investigation, formal and informal discovery, and the exchange of information in the context of preparing for mediation and conducting ongoing settlement negotiations. The Settlement takes into account the potential risks and rewards inherent in any case and, in particular, in this case. Moreover, considering all of the facts in the case, the Gross Settlement Amount represents a considerable recovery.

Even after deducting attorneys' fees in the amount of $875,000.00, litigation costs and expenses in the amount of $10,772.67, Class Representative Service Award in the amount of $7,500.00, Settlement Administrator Costs in the amount of $8,000.00, and the PAGA Allocation in the amount of $150,000.00 from the Gross Settlement Amount of $2,500,000.00, as provided for by the Settlement, the Net Settlement Amount is currently estimated to be $1,486,227.33. Phoenix Decl., ¶ 15.[6] Under the Settlement Agreement, the Gross Settlement Amount will be fully paid out, in accordance with the terms of the Settlement. As discussed in Section III, *supra*, each Participating Class Member will be paid a *pro rata* share of the Net Settlement Amount, based on the number of Compensable Workweeks credited to him or her, pro-rated by the percentage of hours out of 40 hours he or she averaged per week. To date, there are 423 Participating Class Members, representing 99.53% of the Class. *Id.*, ¶ 13. The *highest* Individual Settlement Payment is currently estimated to be at least $7,222.09 and the *average* Individual Settlement Payment is currently estimated to be at least $3,479.91. *Id.*, ¶ 15. The Individual Settlement Payments are

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

---

[6] See n.3, *supra*.

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1 | subject to reduction for the employee taxes and withholdings. These are significant individual

2 | recoveries, particularly in light of the risks of litigation.

3 |      At the final approval stage, "[a]n allocation formula need only have a reasonable, rational

4 | basis [to warrant approval], particularly if recommended by experienced and competent class

5 | counsel." *In re American Bank Note Holographics, Inc., Securities Litigation* (S.D.N.Y. 2001) 127

6 | F.Supp.2d 418, 429-30.  The *pro rata* allocation here is a fair and reasonable way to distribute the

7 | Net Settlement Amount. In light of the above considerations, Class Counsel believes that the

8 | Settlement as a whole is fair, reasonable, and adequate, and in the best interest of the Class

9 | Members and the State of California. Aiwazian Decl., ¶ 21. Although the recommendations of

10 | Class Counsel are not conclusive, the Court can properly take the recommendations into account,

11 | particularly if Class Counsel appears to be competent, has experience with this type of litigation,

12 | and significant discovery and investigation have been completed, as is the case here. Conte &

13 | Newberg, *Newberg on Class Actions* (4th Ed., 2002) § 11.47.  Accordingly, the Court should grant

14 | final approval of the Settlement.

15 |     **D.**    **The Class Was Represented by Competent Counsel.**

16 |      Class Counsel has extensive experience in employment class action law and complex wage-

17 | and-hour litigation. *Id.*, ¶¶ 15-18. Lawyers *for* Justice, PC has been appointed class counsel in

18 | numerous complex wage-and-hour cases, and has recovered millions of dollars for individuals in

19 | California. Ibid. Both Parties' counsel were capable of assessing the strengths and weaknesses of

20 | the Class Members' claims against Defendant and the benefits of the Settlement under the

21 | circumstances of the case and in the context of a private, consensual settlement agreement.

22 |     **E.**    **There Are No Objections to the Settlement.**

23 |      The Settlement has been well received by the Class – ***not a single Class Member objected***

24 | ***to the Settlement.*** Phoenix Decl., ¶ 9. Specifically, no objections have been made as to the Gross

25 | Settlement Amount or requested Attorneys' Fees and Costs, Class Representative Service Award,

26 | Settlement Administrator Costs, or the amount for the PAGA Allocation. California courts have

27 | consistently found that a small number of objectors indicates the class' support for a settlement

28 | and strongly favors final approval. *Wershba*, *supra*, 91 Cal.App.4th at 250-51 (final approval

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1    granted despite 20 objectors); *7-Eleven Owners*, *supra*, 85 Cal.App.4th at 1152-53 (final approval

2    granted despite 9 objectors).

3        Here, the lack of any objections speaks ~~~~~ irness, reasonableness, and

4    adequacy of this Settlement. Accordingly, the Settlement as a whole is presumed to be fair,

5    reasonable, and adequate, and the Court should grant final approval of the Settlement in its entirety.

6    *Dunk*, *supra*, 48 Cal.App.4th at 1802.

7    **VI.    THE SETTLEMENT ADMINISTRATOR COSTS ARE FAIR AND REASONABLE**

8    **AND SHOULD BE APPROVED.**

9        As set forth in the accompanying Phoenix Declaration, the total costs incurred and to be

10   incurred by Phoenix for the notice and settlement administration process are $8,000.00. Phoenix

11   Decl., ¶ 17.  The costs incurred and to be incurred include, but are not limited to, expenses for

12   formatting, printing, and mailing the Class Notice to the Class Members in English; performing

13   skip-trace searches on Class Notices returned as undeliverable; re-mailing the Class Notices to any

14   updated addresses located by skip-trace search; receiving, reviewing, and processing Requests for

15   Exclusion, written objections, and disputes regarding Compensable Workweeks (if any); handling

16   inquiries from Class Members regarding the Settlement; calculating Individual Settlement

17   Payments, and preparing the associated tax forms; and transmitting payments, among other things.

18   *Id*., ¶ 3.

19       Accordingly, the Court should grant final approval of payment to Phoenix, a necessary

20   third-party administrator, for its handling of the notice and settlement process, in the amount of

21   $8,000.00.

22   **VII.  CONCLUSION**

23       For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval

24   of the Settlement and the PAGA Allocation, and award Settlement Administrator Costs, in their

25   entirety, as sought herein.

26   Dated: August 4, 2023                    **LAWYERS *for* JUSTICE, PC**

27

28                          By:    _____*/s/* Brian J. St. John_____
                                   Brian J. St. John
                                   *Attorney for* Plaintiff and the Class

15

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**