Case 8:20-cv-02071-JLS-KES   Document 62   Filed 09/19/23   Page 1 of 15   Page ID #:996

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR MARISCAL, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act,<br><br>PLAINTIFFS,<br><br>v.<br><br>ARIZONA TILE, LLC; and DOES 1 through 100, inclusive,<br><br>DEFENDANTS. | Case No. 8:20-cv-02071-JLS-KES<br><br>**ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 58) AND (2) GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD (DOC. 59)** |

Before the Court are two unopposed Motions filed by Plaintiffs: one seeking final approval of the class action settlement and another seeking attorney fees, costs, and a class-representative service award. (Final Approval Mot., Doc. 58; Fees Mot., Doc. 59.) Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court (1) GRANTS the Motion for Final Approval of Class Action and PAGA Settlement, and (2) GRANTS IN PART the Motion for Award of Attorney Fees, Costs, and Class-Representative Service Award.

### I. BACKGROUND

#### A. Procedural History

On September 15, 2020, Mariscal filed a class action Complaint in the Superior Court of the State of California for the County of Orange against Arizona Tile, seeking damages for alleged violations of the California Labor Code and California Business and Professions Code. (Compl., Doc. 1-1.) On October 26, 2020, Arizona Tile removed the case to federal court. (Notice of Removal, Doc. 1.) Mariscal filed a Motion to Remand, which the Court denied. (Docs. 14, 27.) On May 28, 2021, Mariscal filed an amended complaint, which Arizona Tile answered. (FAC, Doc. 30; Answer, Doc. 31.)

The Parties then engaged in discovery. On March 18, 2021, Mariscal served on Arizona Tile requests for production, two sets of special interrogatories, and a notice of Rule 30(b)(6) deposition of Arizona Tile's person most knowledgeable. (Final Approval Mot., Doc. 58 at 3–4.) On April 6, 2021, Arizona Tile served a notice of deposition on Mariscal and requests for production. (*Id.* at 4.) On April 18, 2021, Arizona Tile responded to Mariscal's discovery requests and provided Mariscal's counsel with pertinent data regarding class members. (*Id.*)

On July 23, 2021, the parties attended a full-day mediation. (*Id.*) After a full day of mediation, the parties reached an agreement to settle Mariscal's claims on a class-wide and representative basis. (*Id.*)

Mariscal served a letter dated September 8, 2021 on the California Labor & Workforce Development Agency ("LWDA") and on Arizona Tile that provided notice of

his intent to seek civil penalties for alleged violations of the California Labor Code under California's Private Attorneys General Act ("PAGA"). (*Id.*) On February 1, 2022, Mariscal filed a Second Amended Complaint ("SAC"), which is the operative complaint in this action. (SAC, Doc. 41.) The SAC alleges claims for failure to properly pay overtime wages, failure to pay meal period premiums, failure to pay rest period premiums, failure to pay minimum wages, failure to timely pay wages upon termination of employment, failure to timely pay wages during employment, noncompliant wage statements, failure to keep requisite payroll records, failure to reimburse business expenses, violation of California Business and Professions Code § 17200 et seq., and violation of California Labor Code § 2698 et seq. (SAC ¶¶ 60-153.)

On January 21, 2022, Mariscal filed an unopposed Motion for Preliminary Approval. (Preliminary Approval Mot., Doc. 37.) After hearing oral argument and ordering supplemental briefing, the Court denied the motion, "tak[ing] issue with one key aspect" of the settlement agreement: The initial agreement would equally compensate full-time employees (an estimated 422 individuals) and part-time employees (an estimated 6 individuals) based on their compensable workweeks, "despite the fact that a 'workweek' signifies a vastly different amount of work for six members of the Class than for the remainder of the Class." (Order Denying Preliminary Approval, Doc. 49 at 1.)

On January 17, 2023, Mariscal filed a Renewed Motion for Preliminary Approval (Renewed Preliminary Approval Mot., Doc. 53), which the Court granted (Order Granting Primary Approval, Doc. 57) because the settlement agreement had been revised to address the flaw identified by the Court. Under the revised agreement, individual settlement payments are calculated based on a class member's compensable workweeks "pro-rated by the percentage of hours out of 40 hours they averaged per week." (Order Granting Prelim App., Doc 57 at 5; *see* Settlement Agreement, Doc. 53-1, Ex. 2. at 21.)

### B. Settlement Agreement

The Settlement Agreement defines the Class, for purposes of settlement only, as: all persons who are employed or have been employed by Arizona Tile, LLC as non-

exempt, hourly employees in California during the period from September 15, 2016 to October 21, 2021. (Settlement Agreement, Doc. 53-1, Ex. 2 at 4.) Plaintiffs represent that this Class includes 425 individuals. (Final Approval Mot., Doc. 58 at 7.)

The Settlement Agreement provides for a gross settlement amount of $2,500,000 on a non-reversionary basis. (Settlement Agreement, Doc. 53-1, Ex. 2 at 6.) The Settlement Agreement also provides that to the extent the number of compensable workweeks increases beyond 50,649 by more than 10%, the gross settlement amount will increase 1% for each 1% increase over 10%. (*Id.* at 25.) Class members will be paid from the net settlement amount on a pro-rata basis. (*Id.* at 20–21.) For full-time class members, individual settlement payments will be based on the number of compensable workweeks during which they worked in proportion to the total number of compensable workweeks worked by all participating class members. (*Id.* at 20.) For part-time class members, individual settlement payments will be based on the number of compensable workweeks they worked, pro-rated by the percentage of hours out of 40 hours they averaged per week, in proportion to the total number of Compensable Workweeks by all participating class members. (*Id.* at 20–21.) Individual settlement payments will be allocated as 20% wages, and 80% interest, penalties, and non-wage damages. (*Id.* at 20.)

After deducting requested attorney fees, litigation costs, class-administration costs, class-representative service awards, and a payment to the California LWDA, the net settlement amount is $1,472,000. Assuming this net settlement amount, the estimated average individual settlement amount is $3,479.91. (Salinas Decl., Doc. 58-3 ¶¶ 12–13.)[1]

C. **Notice and Response**

On April 11, 2013, Phoenix Class Action Administration Solutions ("Phoenix") mailed a Notice via First Class Mail to the 425 identified class members, based on last known addresses provided by Defendant and corroboration via the National Change of

---

[1] As explained below, the Court has reduced the requested attorney fees from $875,000 to $625,000 and the requested class-representative service award from $7,500 to $5,000. Therefore, the net settlement amount is $255,000 larger, and the average individual settlement amount will be slightly higher than estimated as a result.

Address Database. (*Id.* ¶¶ 3–5.) The Notice advised class members of the nature of the case; their right to receive payment under the settlement and the implications of doing so; their right to dispute the number of workweeks; their right to opt out of the Settlement Agreement; their right to object to the Settlement Agreement and to appear at the fairness hearing; the manner and timing for taking any of these actions; and the date and time set for the fairness hearing. (*See* Notice Packet, Doc. 58-3, Ex. A.) The Notice also included the contact information for both parties' counsel, as well as a link to a website providing more information about the case and settlement. (*Id.*)

Sixteen Notices were returned to Phoenix, which then consulted the TransUnion TLOxp database and was able to remail the Notices to fifteen of the sixteen class members. (Salinas Decl., Doc. 58-3 ¶ 6.) One Notice remains undeliverable. (*Id.* ¶ 7.)

The notice period has now ended. From the 425 class members, Phoenix received two requests for exclusion and zero objections. (*Id.* ¶¶ 9–10.)

## II.     CONDITIONAL CERTIFICATION

In its Preliminary Approval Order, the Court conditionally certified the Class under Rule 23(b)(3) for settlement purposes. (Preliminary Approval Order, Doc. 57 at 8–12.) Nothing since the Preliminary Approval Order suggests the Court should depart from its previous conclusions on the existence of a valid class. The Court therefore incorporates its prior class certification into the current Order. (*See id.*)

## III.    FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

### A. Legal Standard

Before approving a class-action settlement, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). To do so, "a district court must consider a number of factors, including: [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant ; and

[8] the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citations and internal quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Servs. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (citations and internal quotation marks omitted).

Additionally, where, as here, "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that the settlement is not "the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (citation omitted). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947 (citation omitted). Such signs include (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (citations omitted).

**B. Discussion**

In the Preliminary Approval Order, the Court evaluated the *Staton* factors identified above to determine whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23. (Preliminary Approval Order, Doc. 57, at 13–15.) The Court determined that the following factors weighed in favor of approval: (1) the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout the trial; (3) the amount offered in settlement; (4) the extent of discovery completed, and the stage of the proceedings; and (5) the experience and views

of counsel. (*Id.*) The Court was also satisfied that there were no signs of collusion between the parties. (*Id.* at 14–15.) The Court sees no reason to depart from its previous conclusion as to these factors. The Court therefore incorporates its analysis from its Preliminary Approval Order into this Order. (*See id.* at 13–15.)

At the time of preliminary approval, the Court could of course not yet assess the class members' reactions to the proposed Settlement Agreement. The notice process has now concluded, and there are no objections and only two requests for exclusion. (Salinas Decl., Doc. 58-3 ¶¶ 8–9.) "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citations omitted). Given the lack of objections and limited number of requests for exclusion, this factor too weighs in favor of approval. *See Rodriguez v. El Toro Limited P'ship*, No. 8:16-cv-59-JLS-KES, Doc. 98, at *7–8 (C.D. Cal. June 26, 2018) (Staton, J.).

\* \* \*

In sum, having weighed the *Staton* and *Bluetooth* factors and considered the settlement as a whole, the Court finds that the proposed settlement (1) is fair, reasonable, and adequate, and (2) is not the product of collusion. Accordingly, Plaintiffs' Motion for Final Approval is GRANTED. The Court now turns to Plaintiffs' Motion for attorneys' fees, costs, and a class-representative service award.

## IV.   LITIGATION AND ADMINISTRATION COSTS

Class Counsel request (1) $10,772.67 in litigation costs, and (2) $8,000 in class-administration costs to Phoenix. (Final Approval Mot., Doc. 58 at 15; Fees Mot., Doc. 59 at 20.).  The Court finds both requests to be reasonable.

Class Counsel in common fund cases are entitled to "reasonable out-of-pocket litigation expenses that would normally be charged to a fee-paying client." *Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) (citations omitted); *see also* 42 U.S.C. § 2000e-5(k); Fed. R.

Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

Here, Class Counsel's request of $10,772.67 in litigation costs primarily includes an $8,000 mediation fee, as well as various filing fees and the cost of service. (Itemized Costs, Doc. 58-1, Ex. B.) The amount Plaintiffs request is also below the $25,000 maximum set out in the Settlement Agreement. (Settlement Agreement, Doc. 53-1, Ex. 2 at 20.) The Court finds that the expenses incurred by Class Counsel were reasonable out-of-pocket litigation expenses that would usually be charged to a fee-paying client, and therefore GRANTS the request for costs.

Class Counsel also request that the Court award $8,000 to the class administrator, Phoenix, for its fees and costs in administering the settlement. The administration costs are below the $15,000 maximum set out by the Settlement Agreement. (*Id.*) Having reviewed the work undertaken by the Settlement Administrator (*see* Salinas Decl., Doc. 58-3), the Court finds the cost of administration was reasonable; therefore, it GRANTS the request for a class-administrator award.

## V. ATTORNEY FEES

Here, Class Counsel request $875,000.00, in attorneys' fees, which represents 35% of the settlement fund. (Fees Mot., Doc. 59 at 1.) The court GRANTS IN PART Plaintiffs' request—awarding attorney fees but decreasing the award to $625,000, which represents 25% percent of the settlement fund in line with the Ninth Circuit's benchmark.

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. In the Ninth Circuit, the benchmark for a fee award in common fund cases is 25% of the recovery obtained. *See id.* at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate

25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure.").

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Id*. at 1050. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

### A. Benchmark

As an initial matter, Class Counsel suggest that the Court should not use the Ninth Circuit's 25% benchmark because California state law governs the award of attorney fees in this diversity action. *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995). (*See* Fees Mot., Doc. 59 at 6.) Though California law governs, it does not require the Court to disregard the Ninth Circuit's 25% benchmark. The California Supreme Court has held only that percentage-based fee awards are allowable under state law; while the lower court in that case awarded one-third of the fund, the California Supreme Court did not adopt a one-third benchmark or otherwise dispute the Ninth Circuit's 25% benchmark. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 487–88, 503 (2016). Indeed, although "California courts do not prescribe a benchmark starting point to evaluate fee requests, the Ninth Circuit's 25% benchmark can be 'a helpful assessment tool in evaluating the requested fee award.'" *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1019 (E.D. Cal. 2019) (quoting *Richardson v. THD At-Home Servs., Inc.*, 2016 WL 1366952, at *7 (E.D. Cal. Apr. 6, 2016)). Therefore, the Court begins its analysis by using the Ninth Circuit's 25% benchmark. It now turns to the *Vizcaino*

factors to determine whether a departure from that benchmark is appropriate.

### B. Results Achieved

Class Counsel achieved a settlement that represents approximately 34% of the total exposure that Defendant "conservative[ly]" estimated when removing this case from state court. (*See* Notice of Removal, Doc. 1 at 14–15.) This percentage of recovery is comparable to those achieved in other wage and hour class action settlements. S*ee Francisco v. Emeritus Corp.*, No. 2:17-cv-02871-VAP-SSx, 2019 WL 7856768, at *5 (C.D. Cal. Sept. 24, 2019) (noting in wage and hour class action that a recovery of 27.78% of defendant's maximum exposure was not an 'exceptional' result," warranting departure from the 25% benchmark*); Freeman v. Zillow, Inc.,* 8:14-cv-01843-JLS-DFM, at Doc. 139 (C.D. Cal. May 10, 2017) (Staton, J.) (granting a modest upward departure to 30% where settlement represented 43% of defendant's maximum exposure). Therefore, the results obtained here do not warrant an upward departure from the 25% benchmark.

### C. Risk of Litigation

Class Counsel argue that the risk undertaken in prosecuting this action counsels in favor of an upward departure from the benchmark. (Fees Motion, Doc. 59 at 18.) But Class Counsel merely describe high-level features of this litigation that are present in virtually all class actions: "Defendants raised defenses and denied liability, and the case involved gathering and analyzing documents and data not only from Defendant but also from the Class Members." (*Id.*) Accordingly, this factor does not weigh in favor of an upward departure from the 25% benchmark.

### D. Skill Required and Quality of Work

Class Counsel provided skillful, quality work—including conducting formal and informal discovery, participating in mediation, and negotiating settlement terms. As noted in the Preliminary Approval Order, Lawyers *for* Justice has extensive experience litigating wage and hour class actions. (Preliminary Approval Order, Doc. 57 at 16.) And again as noted, the Court "is satisfied that [Class Counsel] have the experience and expertise" required. (*Id.*; see also Ghosh Decl., Doc. 48-1 ¶¶ 6–9.) The Court concludes

that the quality of the work was commensurate with what is typically required in successfully litigating a wage and hour class action. Accordingly, this factor does not weigh in favor of an upward departure from the benchmark.

### E. Contingent Nature of the Fee

Class Counsel invested 630.50 hours in this case. (Aiwazian Decl., Doc. 58-1 ¶ 11.) Counsel have received no compensation for their efforts on behalf of Class Members. (Fees Mot., Doc. 59 at 7.) "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994). However, standing alone this factor does not justify an upward departure of the benchmark. *See, e.g., Clayton v. Knight Transp.*, 1:11-cv-00735-SAB, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (acknowledging that the contingent nature of the fee "is an important factor," but declining to grant an upward departure where "the risks associated with this case are no greater than that [sic] associated with any other [similar action]."). Here, the Settlement was reached after only a little over a year of litigation. (Stipulation to Vacate Class Certification Deadline, Doc. 34 at 2.) Put differently, this is not a case where Class Counsel invested years in the case without assurance of compensation. Accordingly, this factor does not weigh in favor of an upward departure from the benchmark.

### F. Lodestar Cross-Check

The Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their [attorneys' fees] calculations against a second method." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 993–94 (9th Cir. 2023) (citation omitted). Therefore, "[c]ourts commonly—even after having decided to utilize the percentage-of-recovery method—perform a 'lodestar cross-check' by comparing the percentage-of-recovery figure with a rough calculation of the lodestar to assess the reasonableness of the percentage award." *Brooks v. Life Care Centers of Am., Inc.*, 2015 WL 13298569, at *5 (C.D. Cal. Oct. 19, 2015) (internal citations and quotation marks omitted).

To calculate the lodestar, the Court must first determine whether the hourly rates sought by counsel are reasonable and then multiply the rates by the reasonable number of attorney and staff hours billed on the case. "[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). In determining reasonable hourly rates, courts may also "rely on [their] own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Here, the time records reflect that attorneys spent 630.50 hours on this matter. (Time Records, Doc. 58-1, Ex. A.) Class Counsel propose using a blended rate of $780 when conducting the lodestar cross-check. (Fees Mot., Doc. 59 at 16; Aiwazian Decl., Doc. 59-1 ¶ 12.) Class Counsel have not provided the Court with sufficient evidence to support their proposed blended rate. Class Counsel do not assert what their respective hourly rates are, or how those rates compare to prevailing rates in the legal community. (*See generally* Aiwazian Decl., Doc. 59-1.) Moreover, contrary to this Court's requirements, Class Counsel's time records do not reflect *who* performed the work described in each entry. *See* Judge Staton Procedures § 26 ("Each billed task shall be set forth on a separate line that consists of," among other things, "the timekeeper . . . performing the task."); Initial Standing Order for Civil Cases Assigned to Judge Josephine L. Staton at 2 (incorporating procedures page). Therefore, the Court lacks both of the necessary components for calculating a blended rate: (1) the reasonable rate for each attorney, and (2) the percentage of the total hours billed by each attorney.

Class Counsel do, however, cite several cases in which courts have approved Lawyers *for* Justice's requests for attorney fees in amounts that would represent a blended rate of at least $780. (Fees Mot., Doc. 59 at 17 n.9.). Because the lodestar cross-check, even when using this figure, supports adhering to the benchmark, the Court will assume without deciding that this is a reasonable hourly rate.

The Court must next determine whether the hours billed are reasonable. To do so, the Court generally "begin[s] with the billing records the prevailing party has submitted,"

and excludes entries for hours that are "excessive, redundant, or otherwise unnecessary." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The Court has reviewed the time records and is not generally troubled by the 630.50 hours billed. That said, without knowing *who* was billing for each task, the Court cannot completely assure itself of the reasonableness of the hours. For example, the reasonableness of the approximately 108.50 hours of document review (Time Records, Doc. 58-1, Ex. A at 9) or 44.50 hours of communicating with Plaintiff Mariscal (*id.* at 3) depends on whether the bulk of those hours were performed by a junior attorney billing at a lower rate, or a senior attorney billing at a higher rate. *See Scott v. HSS Inc.*, No. 8:14-cv-01911-JLS-RNB, 2017 WL 7049524, at *8 (C.D. Cal. Dec. 18, 2017) (reducing hours by 20% because "Counsel billed routine, administrative, or easily delegable tasks at a partner rate"). Were the court awarding fees based on a lodestar calculation, it would—as its procedures require—have Class Counsel resubmit their time records so that each task states "the timekeeper . . . performing the task." Judge Staton's Procedures § 26; Initial Standing Order for Civil Cases Assigned to Judge Josephine L. Staton at 2 (incorporating procedures page). But for purposes of this cross-check, the Court will assume without deciding that these hours are reasonable—as a cross-check even using these hours still does not support an upward departure from the benchmark.

Using Class Counsel's proposed blended rate and reported hours, the lodestar is $491,790 ($780 x 630.5 hours). Class Counsel's request of $875,000 in attorney fees corresponding to 35% of the fund represents a 1.78 multiplier of this lodestar. A $625,000 award corresponding to the 25% benchmark represents a 1.27 multiplier. The lodestar (as calculated using Class Counsel's assumptions) further supports that no upward departure from the benchmark is warranted here.[2]

---

[2] Class Counsel argue that the cross-check supports an upward departure because, had this been a lodestar case, their work would warrant a 2 to 4 multiplier. (Fees Mot., Doc. 59 at 17.) But lodestar multipliers and percentage-of-the-fund departures look to the same factors and, as explained, those factors do not support an upward adjustment here.

13

\* \* \*

To summarize: The Ninth Circuit's 25% percentage-of-the-fund benchmark is the appropriate starting point for the Court's analysis; no exceptional circumstances are present to warrant a departure from that benchmark; and the lodestar cross-check further supports adhering to that benchmark. Accordingly, the Court awards Class Counsel 25% of the Settlement Fund, which amounts to $625,000.

## VI. CLASS-REPRESENTATIVE SERVICE AWARD

Plaintiff Mariscal seeks a $7,500 class-representative service award. (Fees Mot., Doc. 59 at 20–21) The Court GRANTS IN PART Mariscal's request—awarding a class-representative service award but reducing it from the requested $7,500 to $5,000.

Service awards are "discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted).

Class Counsel represents that Mariscal "spent numerous hours speaking with Class Counsel about his claims, describing his work experiences with Defendant, and gathering and reviewing documents." (Fees Mot., Doc. 59 at 21.) Mariscal's declaration and Class Counsel's time records reflect that Mariscal spent about 40 hours assisting in this litigation. (Mariscal Decl., Doc. 58-2; Time Records, Doc. 58-1, Ex. A at 3.)

Mariscal's request for $7,500 "exceed[s] typical incentive awards in the Ninth Circuit, where $5,000 is presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2016 WL 362395, at \*10 (N.D. Cal. Jan. 29, 2016); *see also Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at \*7 (N.D. Cal. Feb. 6, 2012) ("[I]ncentive payments of $10,000 or $25,000 are quite high and . . . as a general matter, $5,000 is a reasonable amount."). While Mariscal dedicated substantial time to this litigation, his forty hours is not as extraordinary amount. *See Correa v. Zillow, Inc.*, No. 8:19-cv-00921-JLS-DFM, 2021 WL 4925394, at \*8 (C.D. Cal. June 14, 2021) (class

representatives spent an estimated 100–150 hours and 250–300 hours assisting in the litigation). Moreover, because Mariscal was no longer employed by Arizona Tile when this action began (*see* Mariscal Decl., Doc. 58-2 ¶ 2), he did not have the heightened stress and reputational risk that current employees do when suing their own employer. *See Correa*, 2021 WL 4925394, at *8 (current employees "assume[] the additional risk that [their employer] might retaliate against them and also experience[] the stress of suing their employer"). Accordingly, the Court finds that the "presumptively reasonable" award of $5,000 is appropriate here.

## VII. CONCLUSION

The Court finds the settlement to be fair, adequate, and reasonable. Moreover, the Court finds that the settlement is not the product of collusion. Accordingly, the Court GRANTS the Motion for Final Approval of Class Action Settlement.

The Court also GRANTS IN PART the Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Class-Representative Service Awards. The Court awards Phoenix $8,000 in class-administration costs. The Court also awards Class Counsel $625,000 in attorney fees, which represents 25% of the settlement fund, and approves Class Counsel's request for $10,772.67 in litigation costs. Finally, the Court approves a $5,000 class-representative service award to Mariscal.

Distribution of settlement payments to class members shall be made in accordance with the method outlined in the Settlement Agreement.

Class Counsel is ORDERED to file a proposed final judgment within five (5) days of entry of this Order.

**It is so ORDERED.**

DATED: September 19, 2023

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE